# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | William J. Hibbler | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 01 C 6857 | DATE | 11/18/02 |
| CASE TITLE | Crowder v. Sodexho Management, Inc. | | |

MOTION: [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

Defendant's Motion to Dismiss (Doc. # 15)

DOCKET ENTRY:

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due _____. Reply to answer brief due _____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing [held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference [held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial [set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs [by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Defendant's motion for summary judgment (Doc. #15) is GRANTED. Any other pending motions are denied as moot.

(11) ■ [For further detail see order on the reverse side of the original minute order.]

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| DOROTHY CROWDER, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> SODEXHO MANAGEMENT, INC. ) <br> ) <br> Defendant. ) | Case No. 01C 6857 <br><br> Judge William J. Hibbler |

DOCKETED
NOV 21 2002

## MEMORANDUM OPINION AND ORDER

### I. INTRODUCTION

Dorothy (a.k.a. Cynthia) Crowder alleges that Sodexho Management, Inc. violated Section 621 of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 and Section 12101 of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101. The court has before it a Motion for Summary Judgment filed by Defendant Sodexho, which has been fully briefed. For the following reasons, Defendant's Motion for Summary Judgment is **GRANTED**.

### II. STANDARD OF REVIEW

Summary judgment is appropriate when the record shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A genuine issue of material fact exists only where the dispute over the facts might affect the outcome of the lawsuit and there is sufficient evidence to support a jury verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When resolving a motion for summary judgment, the Court must consider the evidence in the light most favorable to the nonmoving party and resolves all inferences in the nonmoving party's favor. *Vitug v. Multistate Tax Comm'n*, 88 F.3d 506, 511 (7th Cir .1996).



## III. FACTS

From the mid-1990s until November 2001, Dorothy Crowder was employed by Sodexho as a cashier at DePaul University's downtown Chicago campus cafeteria. At all times relevant to this litigation, Leo Pecoraro was the manager of Sodexho's city-wide DePaul unit and Wendy Bonovich was the manager of the downtown cafeteria. During Crowder's employment, Rhonda Harris was the night shift manager at the cafeteria.

In June 1999, at age 38, Crowder underwent a total hysterectomy to remove fibroid tumors resulting in the removal of her uterus, fallopian tubes and one of her ovaries. As a result of the operation, Crowder has trouble lifting multiple heavy objects and can no longer run recreationally. Crowder also previously had her fallopian tubes tied in 1989 so she could no longer have children. Crowder returned to work in September 1999 with no medical restrictions as evidenced by a note from her surgeon.

In April 2000, Sodexho noticed the downtown Chicago cafeteria's revenue was decreasing and attributed the decline in revenue to a suspicious number of small (10¢-15¢) charges on the cafeteria's receipts. As a result of the findings, Sodexho's DePaul campus manager, Leo Pecoraro, and his supervisor, Bob Luedtke, employed an undercover observer to monitor the cafeteria. Pecoraro and Luedtke chose Jane Forest, head cashier at another university location operated by Sodexho, to monitor the downtown cafeteria. Forest came to the downtown cafeteria, purchased food, and observed the cashiers and customers. Forest was not instructed to target any employee, including Plaintiff, but instead to observe generally all transactions at the cafeteria. In conducting her surveillance, Forest visited the cafeteria on May 25, May 30, and June 1, and wrote detailed descriptions of her observations. Forest's notes included comments regarding the failure of another cashier to wear a nametag as well as an

assessment of the cashiers' friendliness and speed. More seriously, however, Forest witnessed Crowder giving away food or selling meals at reduced prices on several occasions. In particular, Forest observed Crowder allowing some individuals to walk through the line without exchanging any cash. Forest also observed Crowder accepting funds that were insufficient to cover the price of the food purchased. For example, according to Forest, Crowder accepted $5.00 from a woman, when the total price of the woman's meal should have been more than $5.00. Furthermore, Forest noticed that the individuals who received free or reduced-price food went to Crowder's station even when the line was shorter or non-existent at other cashier's stations. Forest wrote detailed notes describing each transaction where Crowder gave away food or sold it at a reduced price. During Forest's three-day observation period, she did not witness any employee other than Crowder give away merchandise.

After Sodexho received the Forest's report, Leo Pecoraro, manager of Sodexho's DePaul unit, met with Sodexho's Director of Human Resources (Terry O'Leary) and Director of Corporate Security (Mike Duwe) to discuss the observations. Pecoraro, O'Leary, and Duwe decided to terminate Crowder based on the undercover observer's findings. At the time, Wendy Bonovich, Crowder's immediate supervisor, was on vacation during the process and was not involved in the decision to terminate Crowder. When preparing the termination memo, Pecoraro reviewed Forest's report as well as the record of the cafeteria's cash register activity for the days in which Forest witnessed Crowder giving away food. The cash register's log confirmed the Forest's findings. On June 12, 2000, Duwe informed Crowder that she was being terminated because an undercover observer witnessed her giving away food and selling it at reduced prices.

At the time of her discharge, Crowder was forty years old. Believing that she had been discriminated against because of her age and her disability, Crowder then filed this suit. In her

deposition, Crowder admitted that she gave away free or discounted food to maintenance employees, including her ex-husband and father, on the days the undercover observer visited the cafeteria. Crowder claims, however, she only gave away food at the direction of the night shift supervisor, Rhonda Harris. Crowder contends, and Harris acknowledges, that Harris directed her to give away free food infrequently to maintenance employees as an informal reward for extraordinary efforts. Sodexho claims that Crowder's primary daytime supervisors, Pecoraro and Bonovich, never told Crowder to give away food and were not aware of Harris's practice. In support of her claim, Crowder contends that other younger, non-disabled cashiers (specifically Yvette Hobbs and Alice Stapleton) were not fired even though they also gave away free food under Harris's direction. Crowder, however, submitted no evidence that *Forest* observed Hobbs and Stapleton giving away free food during the three days she secretly monitored the cafeteria.

## IV. ANALYSIS

To prevail on the ADEA and ADA claims, Plaintiff must establish a prima facie case of discrimination, i.e., that (1) Crowder is a member of the protected group; (3) who was performing her job satisfactorily; (3) she was discharged; and (4) similarly situated employees were treated more favorably. *Rummery v. Illinois Bell Telephone Co.*, 250 F.3d 553, 556 (7th Cir. 2001)(ADEA); *Amadio v. Ford Motor Co.*, 238 F.3d 919, 924 (7th Cir. 2001)(ADA). Once Plaintiff satisfies this initial burden, Sodexho must then articulate a legitimate, nondiscriminatory reason for terminating Crowder's employment. *Rummery*, 250 F.3d at 556; *Amadio*, 238 F.3d at 919. If Sodexho clears that hurdle, it will be up to Plaintiff to demonstrate that the reason offered by Sodexho is pretextual. *Rummery*, 250 F.3d at 556; *Amadio*, 238 F.3d at 919.

4

### 1. Similarly situated employees were not treated more favorably.

Concerning the prima facie case, assuming *arguendo* that Crowder can satisfy elements one, two and three, she cannot satisfy the fourth prong of the test, since the undisputed evidence here shows Crowder cannot identify any other similarly situated employees who were treated more favorably. Sodexho decided to terminate Crowder on the basis of the report from the undercover observer, Forest. Crowder was the *only* employee mentioned by the undercover observer to have given away food. Although Crowder contends that Hobbs and Stapleton were not discharged even though they also gave away food, her contention is immaterial because she offers no evidence that Sodexho was aware that Hobbs and Stapleton gave away food or that Forest was instructed to target Crowder. *Box v. A & P Tea Co.*, 772 F.2d 1372, 1378 (7th Cir. 1985). There are no other similarly situated employees in this case because Crowder was the *only employee* who gave away food that came to the attention of the decision-makers, Pecoraro, O'Leary, and Duwe.

### 2. The Defendant has offered a legitimate, non-discriminatory reason for terminating the Plaintiff.

Even if Crowder met her initial burden of establishing a prima facie case, Sodexho has offered a legitimate, nondiscriminatory reason for discharging her. Sodexho discharged Crowder based on a report by an undercover observer who witnessed Crowder giving away free and reduced priced food. The negative observations of mystery shoppers can be legitimate, non-discriminatory reasons for discharging an employee. *Connolly v. Ala Carte Entertainment, Inc.*, No. 02 C 0492, 2002 WL 31248497 at *4-5 (N.D. Ill. Oct. 7, 2002). Employee theft is a legitimate reason to terminate an employee and Sodexho's undercover observer witnessed Crowder giving away food. Sodexho has offered a legitimate, non-discriminatory reason for discharging the Plaintiff. Thus, even if Crowder could establish a prima facie case, she would be

required to demonstrate that Sodexho's reason for terminating her was pretextual. *Rummery*, 250 F.3d at 556; *Amadio*, 238 F.3d at 919.

### 3. The Defendant's reasons for discharging the Plaintiff were not pretextual.

Plaintiff offers a number of arguments, none of which are convincing, in support of her claim that Sodexho's asserted reason for her discharge was pretextual. First, Plaintiff contends that the undercover observer did not have a clear view of the cashier stations and could not have seen her giving away food. Plaintiff's contention that the undercover observer's view was obstructed is immaterial; the only issue the court must resolve is whether Sodexho believed in good faith that the undercover observer saw Crowder giving away free food. *Kariotis v. Navistar Int'l Transit Corp.*, 131 F.3d 672, 677 (7th Cir. 1997); *Lenoir v. Roll Coater*, 13 F.3d 1130, 1133-34 (7th Cir. 1994). To establish that an employer's reasons are pretextual, Crowder must do more than show that the employer's judgment is mistaken, she must establish that the employer's reason is a lie. *Jordan v. Summers*, 205 F.3d 337, 344 (7th Cir.2000). Thus, the Court considers only whether Sodexho investigated Plaintiff differently because she was older and disabled, and not whether Forest's observations were accurate. *Kariotis*, 131 F.3d at 677. Crowder submitted no evidence to suggest that, because of her age or disability, she was the target of Forest's investigation. Forest's notes indicate that she focused on employees other than Crowder. Furthermore, Crowder submits no evidence to suggest that the decision-makers did not in good faith believe the contents of Forest's report, which informed them that Crowder had distributed free and reduced price food. Thus, Crowder's arguments related to the accuracies of Forest's observations do not create a genuine issue of material fact as to whether Sodexho's reason for terminating her was pretextual.

Crowder next contends Sodexho's reason for firing her was pretextual because her supervisors told her to give free food to maintenance employees who went beyond the call of duty. Crowder claims that her supervisors told her to give away free food as a reward to maintenance employees who went beyond their normal duties, and Sodexho acknowledges that a low level supervisor may have authorized the practice. Crowder also contends that pretext is demonstrated by the fact that other employees also gave away food but were not fired. But, as noted above, Crowder submitted no evidence to demonstrate that the decision-makers were aware either of the fact that Harris had authorized Crowder to provide free food to employees or of the fact that other employees were giving away free food. At the time of Crowder's discharge, they knew only that she had given away free food. Although in the interest of developing positive employee relations, Sodexho might have been better served to question *why* Crowder had given away free food before making the decision to terminate her, the Court is not concerned with whether the employer's decision was fair or well considered. *O'Conner v. DePaul Univ.*, 123 F.3d 665, 670 (7th Cir. 1997). Instead, the Court looks only at whether the decision was discriminatory. *Id.* Crowder's claim that she was authorized to give away free food simply does not undermine Forest's report, and she points to no evidence that suggests that Sodexho did not have a good faith basis to accept the contents of Forest's report.

Finally, Crowder contends that Sodexho's use of Forest was nothing more than an elaborate plot designed to entrap her and provide a basis for discharging her. Crowder claims that after she declined a promotion to a lead cashier position that was vulnerable to furlough at management's discretion, her supervisors hatched this plot to dismiss her. Crowder speculates that Harris instructed her to give away food for the sole purpose of providing a basis for Sodexho to launch an undercover investigation to catch her in the unauthorized act of giving away food

and then discharge her. Crowder submitted not a single bit of evidence of this alleged plot, and without such evidence the Court can draw no inference that such an elaborate plot did in fact exist. *Konowitz v. Schnadig Corp.*, 965 F.2d 230, 234 (7th Cir. 1992). Plaintiff's subjective beliefs in a covert conspiracy to discharge her are not enough to establish pretext. Instead, Crowder must submit "[f]acts, not . . . perceptions or feelings, . . . to support a discrimination claim." *Uhl v. Zalk Josephs Fabricators, Inc.*, 121 F.3d 1133, 1137 (7th Cir. 1997). Plaintiff's subjective beliefs and speculation are insufficient to establish pretext and defeat Defendant's motion for summary judgment. *Murray v. Chicago Transit Authority*, 252 F.3d 880, 888 (7th Cir. 2001).

## V. CONCLUSION

The Court holds that Crowder cannot prove that similarly situated employees received more favorable treatment. Furthermore, the Court holds that Sodexho offered a legitimate reason for her discharge and Crowder has not submitted evidence to establish that the reason was not pretextual. For the foregoing reasons, Sodexho's motion for summary judgment is GRANTED.

**IT IS SO ORDERED.**

11/18/02
Date

William J. Hibbler
United States District Court

8